U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
JAN 2 0 2005
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CV05-0097 S

SHEILA MEDINA
    Plaintiff

CIVIL NO.

JUDGE HICKS

VERSUS

MAGISTRATE JUDGE HAYES

Horseshoe Entertainment ("Horseshoe Casino")
and HARRAH'S CASINO     MAGISTRATE JUDGE
    Defendant

## COMPLAINT WITH JURY TRIAL DEMAND

### JURISDICTION

This is a Civil Action for equitable relief and for money damages brought by Sheila Medina and against Defendants for discrimination in violation of Plaintiffs' rights as guaranteed by Title I of the *Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A., Section 12101*, Civil Rights Act of 1964 and 1991 and the Age Discrimination in Employment Act and COBRA claims for penalties disparate treatment and retaliation.

Jurisdiction is founded upon 28 U.S.C. 1331 and 1343(a)(3) and (4). Plaintiff further invokes the supplemental jurisdiction of this Court to consider claims arising under State law.

1

## PARTIES

1.

Plaintiff SHEILA MEDINA's domicile is located at 3309 Valewood Drive, Shreveport, Caddo Parish, Louisiana 71109. She is a female of Puerto Rican and Hispanic descent. She is over the age of 40. At the time of her discharge, she was approximately 54 years of age.

2.

Made Defendants herein are:

1. Horseshoe Gaming Holding Corp., d/b/a Horseshoe Entertainment, A Partnership, d/b/a Horseshoe Casino and Hotel, 711 Horseshoe Blvd., Bossier City, LA ("HORSESHOE")

2. Harrah's Operating Company, Inc., d/b/a Horseshoe Casino at 711 Horseshoe Blvd., Bossier City, La.. Its principal place of business is One Harrah's Court, Las Vegas, NV 89119. Harrah's purchased the Horseshoe Casino during 2004 and assumed additional legal responsibility for any acts which occurred at the casino. ("HORSESHOE"). Harrah's Operating Company is a responsible party.

3.

Ms. Medina first became employed by HORSESHOE during June 15, 1994 as a security officer. She was terminated by HORSESHOE on or about September 4, 2003,

because she was either disabled, had a history of disability or was regarded as disabled.

4.

Ms. Medina has Chronic Obstructive Pulmonary Disease (COPD). This condition has a significant impact upon her breathing. Second-hand cigarette smoke aggravates her condition. There is a great deal of second-hand cigarette smoke inside the casino.

5.

Generally from 2000 to 2003, Ms. Medina worked in a smoke free environment at the employee entrance. The employee entrance was deleted. She was moved mid 2003 to the employee entrance, then to the security shack North Point Check Gate area, then was transferred to the service ramp, then she was transferred to the boat for one or two days on the boat, back to the service ramp and she last worked on the boat for half a day where she was released after asking Mr. Cherry, her supervisor, why she was back on the boat in a smoking environment on or about September 5, 2003.

6.

Beginning March 4, 2003, Ms. Medina was approved for intermittent leaves of absence under FMLA due to her serious health condition, COPD.

7.

By letter dated September 5, 2003, Ms. Medina was informed by Employee Relations Manager David Brossette that she was given a personal leave of absence of thirty days to find other employment at Horseshoe because " . . . you cannot work in your capacity as a Security Officer due to the smoking environment which aggravates your health condition." Despite a diligent search for other employment, Ms. Medina could not find an open position. Ms. Medina was fired by Horseshoe on October 5, 2003.

8.

Ms. Medina's immediate supervisor, Bill Cherry, harassed her due to her disability. His harassment was pervasive and offensive. He harassed due to her disability by being disciplined with out cause.

9.

Horseshoe Casino did not engage in an interactive process to accommodate her in her employment due to her disability.

10.

Ms. Medina's replacement after being fired was a white male whose age was probably under the age of 40. The management interviewed this person for Ms. Medina's slot days before Medina was actually discharged. White males had been

favorably and preferentially treated by Mr. Cherry and the VP of Security, Rick Christian. A white male security employee, Richard Ferguson, suffered congestive heart failure. He was provided a job position which was less strenuous including driving a shuttle bus which transported employees from their parking area to the entrance.

11.

Defendant did not properly notify Mrs. Medina within the legal delays of her COBRA insurance rights and as a consequence, she was unable to take advantage of her legal rights to maintain, continue or obtain health insurance. Greg Bradley was notified of this deficiency and failed to take any steps to notify Mrs. Medina.

### FIRST CAUSE OF ACTION: DISABILITY DISCRIMINATION

12.

Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 11 as is set forth in full herein.

13.

HORSESHOE failed to provide Plaintiff an accommodation under the Americans with Disabilities Act and treated and regarded her as disabled, or as though she had a record of being disabled, and HORSESHOE discharged her as being disabled. Plaintiff received disparate treatment in comparison to her fellow employees who also suffered

serious health conditions, but were accommodated with another job.

14.

Defendant, HORSESHOE, by the conduct of their agents and employees herein alleged, intentionally, willfully and without justification, did deprive the Plaintiff of her rights secured to her by the laws of the United States, particularly her right to be free from disability discrimination, as provided by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.A., Section 12101 and disparate treatment when they fired her, failed to enter in to an interactive process to accommodate her, failed to accommodate her and failed to transfer her and failed to hire her when she sought other positions of employment at Horseshoe. Plaintiff also contends that her discharge was also retaliation for her requesting an accommodation due to her disability and opposing a discriminatory practice.

15.

The conduct of HORSESHOE caused Plaintiff to suffer lost wages, past and future, mental distress, humiliation and embarrassment. As a result of Defendants' deliberate indifference to Plaintiff's rights, Plaintiff is entitled to recover punitive and compensatory damages against Defendant. The Plaintiff has suffered damages and asks to be awarded a reasonable sum plus any and all consequential damages.

## SECOND CAUSE OF ACTION: AGE DISCRIMINATION

16.

Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 15 as is set forth in full herein..

17.

Defendant, HORSESHOE, by the conduct of their agents and employees herein alleged, intentionally, willfully and without justification, did deprive the Plaintiff of her rights secured to her by the laws of the United States, particularly her right to be free from discrimination because of her age, as provided by the Age Discrimination in Employment Act, 42 U.S.C.A., Section 12101 and disparate treatment when they fired her and failed to hire her when she sought other positions of employment at Horseshoe.

18.

The conduct of HORSESHOE caused Plaintiff to suffer lost wages, past and future, mental distress, humiliation and embarrassment. As a result of Defendants' deliberate indifference to Plaintiff's rights, Plaintiff is entitled to recover liquidated damages against Defendant. The Plaintiff has suffered damages and asks to be awarded a reasonable sum plus any and all consequential damages.

## THIRD CAUSE OF ACTION: NATIONAL ORIGIN DISCRIMINATION

19.

Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 18 as is set forth in full herein.

20.

Defendant, HORSESHOE, by the conduct of their agents and employees herein alleged, intentionally, willfully and without justification, did deprive the Plaintiff of her rights secured to her by the laws of the United States, particularly her right to be free from national origin discrimination, as provided by The Civil Rights Act of 1991, 42 USC 2000e, et seq when they fired her, and failed to hire her when she sought other positions of employment at Horseshoe.

21.

The conduct of HORSESHOE caused Plaintiff to suffer lost wages, past and future, mental distress, humiliation and embarrassment. As a result of Defendants' deliberate indifference to Plaintiff's rights, Plaintiff is entitled to recover punitive and compensatory damages against Defendant. The Plaintiff has suffered damages and asks to be awarded a reasonable sum plus any and all consequential damages.

## FOURTH CAUSE OF ACTION: RETALIATION

22.

Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 21 as is set forth in full herein.

23.

HORSESHOE retaliated against Plaintiff when it discharged her, after she requested an accommodation.

24.

Defendant, HORSESHOE, by the conduct of their agents and employees herein alleged, intentionally, willfully and without justification, did deprive the Plaintiff of her rights secured to her by the laws of the United States, particularly her right to be free from retaliation under the ADA, Civil Rights Act of 1964 and 1991, and the ADEA.

25.

The conduct of HORSESHOE caused Plaintiff to suffer lost wages, past and future, mental distress, humiliation and embarrassment. As a result of Defendants' retaliation toward Plaintiff, she is entitled to recover compensatory and punitive damages against Defendants. The Plaintiff has suffered damages and asks to be awarded a reasonable sum plus any and all compensatory damages.

## FIFTH CAUSE OF ACTION: STATE LAW CLAIMS

26.

Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 25 as is set forth in full herein.

27.

Plaintiff asserts claims against HORSESHOE and HARRAH's under Louisiana state law for disability discrimination, disparate treatment, age discrimination and national origin discrimination and retaliation for firing her, failing to accommodate, and failing to hire her.

28.

The conduct of HORSESHOE caused Plaintiff to suffer lost wages, past and future, mental distress, humiliation and embarrassment. As a result of Defendants' discrimination, disparate treatment and retaliation, Plaintiff is entitled to recover compensatory damages against Defendant. The Plaintiff has suffered damages and asks to be awarded a reasonable sum plus any and all compensatory and consequential damages.

## SIXTH CAUSE OF ACTION: STATE LAW CLAIMS

29.

Plaintiff repeats, reiterates and realleges each and every allegation contained in

10

Paragraphs 1-28 as is set forth in full herein.

29.

Defendant failed to provide COBRA notice timely to Plaintiff. As such, Plaintiff is entitled to daily penalties as provided by law under COBRA and ERISA laws.

## MISCELLANEOUS

30.

Defendants acted with reckless disregard to Plaintiff's federally and state protected rights. Thus, Plaintiff is entitled to punitive damages.

31.

Plaintiff is entitled to attorney fees should she prevail in this case.

32.

Plaintiff is entitled to a trial by jury.

## PRAYER

WHEREFORE, Plaintiff, SHEILA MEDINA, prays:

1. That there be judgment in her favor against Defendants for compensatory damages, lost wages attorney fees, litigation expenses and costs of court, in a reasonable sum to be set by this Court.

2. That there be judgment in his favor against Defendants for punitive damages, in a reasonable sum to be set by this Court.

3. For such other and further relief as to this Court may seem just and proper under the circumstances.

4. She be granted ERISA and COBRA penalties as provided by law for failure to provide timely notice to Plaintiff

5. She be granted a trial by jury.

Respectfully Submitted:

_____
NELSON W. CAMERON (Bar No. 01283)
Attorney at Law
675 Jordan Street
Shreveport, Louisiana 71101
318-226-0111 Telephone
318-226-0760 Facsimile

**Attorney for Plaintiff, Sheila Medina**